IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>　　　　　　*Plaintiff*,<br><br>　　v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>　　　　　　*Defendant*. | Case No.  1:24-cv-1911 |

# Exhibit K

**Congress of the United States**

**Washington, DC 20515**

February 12, 2024

The Honorable Merrick Garland
Attorney General
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Dear Attorney General Garland:

  The Committee on Oversight and Accountability (the Oversight Committee), the Committee on the Judiciary, and the Committee on Ways and Means (collectively, the Committees) are investigating whether sufficient grounds exist to draft articles of impeachment against President Biden for consideration by the full House.[1] Since the beginning of the 118th Congress—and, subsequently, in furtherance of the impeachment inquiry as detailed in a memorandum released by the three Committees[2]—the Oversight Committee has investigated President Biden's mishandling of classified materials. To date, the Department of Justice (the Department) has rebuffed the Oversight Committee's requests for information under the justification of "protect[ing] the integrity of Special Counsel Hur's ongoing investigation[.]"[3] Mr. Hur's investigation—which included an interview with President Biden—has now concluded.[4] For our investigatory purposes, the Committees require certain records relating to Mr. Hur's investigation and report.

  On October 16, 2023, the Oversight Committee wrote to Special Counsel Robert Hur requesting information related to its investigation.[5] The Oversight Committee has sought information regarding President Biden's mishandling of classified information in relation to its ongoing investigation into his participation in his family's international business dealings in, among other places, China and Ukraine.[6] As detailed in Mr. Hur's report, classified materials

---

[1] *See* H. Res. 918, 118th Cong. (2023); Memorandum from Hon. James Comer, Chairman, H. Comm. on Oversight & Accountability, Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, & Hon. Jason Smith, Chairman, H. Comm. on Ways & Means, to H. Comm. on Oversight & Accountability, H. Comm. on the Judiciary, & H. Comm. on Ways & Means. Re: Impeachment Inquiry (Sept. 27, 2023) [hereinafter Impeachment Inquiry Memorandum].
[2] *See* Impeachment Inquiry Memorandum.
[3] Letter from Carlos Felipe Uriarte, Assistant Atty. Gen., U.S. Dep't of Just., to Hon. James Comer, Chairman, H. Comm. on Oversight & Accountability (Oct. 31, 2023).
[4] Report of the Special Counsel on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr. (Feb. 5, 2024) [hereinafter Hur Report].
[5] Letter from Hon. James Comer, Chairman, H. Comm. on Oversight & Accountability, to Special Counsel Robert Hur, U.S. Dep't of Just. – Special Counsel's Office (Oct. 16, 2023).
[6] *See, e.g.*, Memorandum (Mar. 16, 2023), H. Comm. on Oversight & Accountability. From Maj. Comm. staff to Comm. Members. Re: New Evidence Resulting from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes; Memorandum (May 10, 2023), H. Comm. on Oversight & Accountability. From Maj. Comm. staff to Comm. Members. Re: Second Bank Records Memorandum from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes; Memorandum (Aug. 9, 2023), H. Comm. on Oversight & Accountability. From Maj. Comm. staff to Comm.

The Honorable Garland
February 12, 2024
Page 2 of 4

found at both President Biden's residence in Wilmington, Delaware and the Penn Biden Center for Diplomacy and Global Engagement include documents related to China and Ukraine.[7] On October 31, 2023, the Department responded to the Oversight Committee with a letter emphasizing it would not produce the requested information "to avoid even the appearance of undue political influence over law enforcement decisions" in relation to Mr. Hur's then-ongoing investigation.[8]

On February 8, 2024—the day Mr. Hur's report was made public—President Biden held a press conference in which he delivered remarks and answered questions from reporters.[9] The President stated, "I've seen the headlines since the report was released about my willful retention of documents. These assertions are not only misleading, they're just plain wrong."[10] In response to a question regarding sharing classified information with his ghostwriter, Mark Zwonitzer—a fact documented in Mr. Hur's report—the President claimed, "I did not share classified information, I did not share it."[11] This assertion appears to be false. Thus, mere hours after the release of Mr. Hur's report, the President appears to have inaccurately contradicted key facts about its contents.

Throughout Mr. Hur's report, there is reference to a transcript of an interview conducted with President Biden on October 8 and October 9, 2023.[12] The Committees require this transcript and any other records of this interview, including, but not limited to, any recordings, notes, or summaries of the interview.

As explained to Mr. Hur in October, there is concern that President Biden may have retained sensitive documents related to specific countries involving his family's foreign business dealings. Further, we seek to understand whether the White House or President Biden's personal attorneys placed any limitations or scoping restrictions during the interview that would have precluded a line of inquiry regarding evidence (emails, text messages, or witness statements) directly linking the President to troublesome foreign payments.[13]

Additionally, the Committee on the Judiciary requires these documents for its ongoing oversight of the Department's commitment to impartial justice and its handling of the investigation and prosecution of President Biden's presumptive opponent, Donald J. Trump, in

---

Members. Re: Third Bank Records Memorandum from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes; Memorandum (Nov. 1, 2023), H. Comm. on Oversight & Accountability. From Maj. Comm. staff to Comm. Members. Re: Fourth Bank Records Memorandum from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes.
[7] *See* Hur Report at Appendix A.
[8] *Supra*, n.3.
[9] White House, *President Biden delivers remarks at the White House*, YOUTUBE (Feb. 8, 2024), https://www.youtube.com/watch?v=hSckeFQ3zsA.
[10] *Id.*
[11] *Id.*
[12] *See, e.g.*, Hur Report at 52, n.180; 1109, n.460.
[13] Notably, text messages, email communications, and witness testimony are all admissible evidence during hearings and trials pursuant to the Federal Rules of Evidence.

The Honorable Garland
February 12, 2024
Page 3 of 4

the November 2024 presidential election.[14] Despite clear evidence the President willfully retained and transmitted classified materials willfully, Mr. Hur recommended "that no criminal charges are warranted in this matter."[15] Although Mr. Hur reasoned that President Biden's presentation "as a sympathetic, well-meaning, elderly man with a poor memory" who "did not remember when he was vice president" or "when his son Beau died" posed challenges to proving the President's guilt beyond a reasonable doubt, the report concluded that the Department's principles of prosecution weighed against prosecution because the Department has not prosecuted "a former president or vice president for mishandling classified documents from his own administration."[16] The one "exception" to the Department's principles of prosecution, as Mr. Hur noted, "is former President Trump."[17] This speaks volumes about the Department's commitment to evenhanded justice.[18]

In light of Mr. Hur's completion of his investigation, the Committees require material in the possession of the Department. Accordingly, please produce the following information:

1. All documents and communications, including audio and video recordings, related to the Special Counsel's interview of President Biden;

2. All documents and communications, including audio and video recordings, related to the Special Counsel's interview of Mark Zwonitzer;

3. The documents identified as "A9" and "A10" in Appendix A of Mr. Hur's report, which relate to President Biden's December 11, 2015 call with then-Ukrainian Prime Minister Arseniy Yatsenyuk; and

4. All communications between or among representatives of the Department of Justice, including the Office of the Special Counsel, the Executive Office of the President, and President Biden's personal counsel referring or relating to Mr. Hur's report.

Please produce this information as soon as possible, but no later than 5:00 p.m. on February 19, 2024. Given the seriousness of these matters, the Committees are prepared to compel the production of this material if necessary.

---

[14] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Hon. Merrick B. Garland, Atty Gen., U.S. Dep't of Just. (June 1, 2023); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Hon. Merrick B. Garland, Atty Gen., U.S. Dep't of Just. (June 6, 2023); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Jack Smith, Special Couns., U.S. Dep't of Just. (Sept. 7, 2023); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Jack Smith, Special Couns., U.S. Dep't of Just. (Dec. 21, 2023).
[15] Hur Report at 1.
[16] *Id.* at 6, 208, 250.
[17] *Id.* at 250.
[18] *Cf.* Anne Bowen Poulin, *Prosecutorial Discretion and Selective Prosecution: Enforcing Protection After* United States v. Armstrong, 34 AM. CRIM. L. REV. 1071, 1086-1087 (1997) ("First, using the power of prosecution against particular disfavored [persons] creates or reinforces destructive divisions within society . . . . Second, improper selective prosecution undermines the authority, integrity, and stature of the justice system . . . . When justice is not even-handed or not perceived as even-handed, the integrity of the justice system is undermined, and confidence in its effectiveness dwindles.").

The Honorable Garland
February 12, 2024
Page 4 of 4

Thank you for your cooperation with the impeachment inquiry.

Sincerely,

_____
James Comer
Chairman
Committee on Oversight and Accountability

_____
Jim Jordan
Chairman
Committee on the Judiciary

_____
Jason Smith
Chairman
Committee on Ways and Means

cc:   The Honorable Jamie B. Raskin, Ranking Member
      Committee on Oversight and Accountability

      The Honorable Jerrold Nadler, Ranking Member
      Committee on the Judiciary

      The Honorable Richard E. Neal, Ranking Member
      Committee on Ways and Means