IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>           *Plaintiff*,<br><br>     v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>           *Defendant*. | Case No.  1:24-cv-1911 |

# Exhibit N



**U.S. Department of Justice**

Office of Legislative Affairs

*Office of the Assistant Attorney General*          Washington, DC 20530

March 7, 2024

The Honorable Jim Jordan  
Chairman  
Committee on the Judiciary  
U.S. House of Representatives  
Washington, DC 20515

Dear Chairman Jordan:

       This responds to the letter and subpoena from the House Committee on the Judiciary (Committee) to the Department of Justice (Department), dated February 27, 2024, regarding the investigation of Special Counsel Robert K. Hur of matters related to classified documents or other records discovered at the Penn Biden Center for Diplomacy and Global Engagement and the Wilmington, Delaware, private residence of President Joseph R. Biden, Jr. This letter supplements the Department's February 16, 2024, response to your related request letter sent on February 12, 2024. We are sending an identical response to the House Committee on Oversight and Accountability in response to its identical letter and subpoena.

       Today, in response to your request, the Department is producing multiple documents that have completed the standard interagency review process described in the Department's February 16 letter.[1] This production includes the two documents cited in the report that were requested by the Committee, which we will make available through an in camera production in a facility appropriate for viewing classified information. It also includes communications between the Department and the Executive Office of the President or President Biden's personal counsel referring or relating to Mr. Hur's report. As we have done since the outset of this Congress, the Department continues to fulfill its commitment to cooperate in good faith with Congress and to protect the public interest in the integrity of our work.[2] We urge the Committee to join us in seeking to avoid conflict when there is, in fact, cooperation.

       To date, the Committee has received a significant amount of information about Special Counsel Hur's investigation. Two days after Mr. Hur submitted a confidential report explaining his prosecution and declination decisions to the Attorney General, the Attorney General transmitted that report to Congress and released it to the public in full without any additions, redactions, or other modifications. Mr. Hur's report provided the Committee and the public with

---

[1] *See* Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary at 2 (Feb. 16, 2024).  
[2] *See generally* Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Jan. 20, 2023).

The Honorable Jim Jordan
Page 2

a large volume of information about his investigation, including the evidence he obtained, and his decision-making. In addition, Mr. Hur is scheduled to appear on March 12, 2024, for a hearing before the Committee.

On February 12, 2024, less than a week after the transmittal of Special Counsel Hur's report to Congress, the Committee requested a range of materials cited in the report as well as other Executive Branch materials, with a response requested in one week. The Department wrote back four days later to emphasize the Department's commitment to responding to the Committee's requests expeditiously and to explain the standard process for such requests, consistent with how the Department has responded following closures of past Special Counsel investigations. That review remains actively underway.

Given this record, we are disappointed that the Committee chose to serve a subpoena less than three weeks after Mr. Hur's report was transmitted to Congress and only seven business days after the Department made clear it was working expeditiously to respond in good faith to congressional requests on this matter. This compressed time frame is not reasonable given the standard interagency review process the Department explained to the Committee. Your subpoena is premature and unnecessary given the amount of information the Committee has already received and the Department's proactive efforts to prepare for responding to congressional requests on this matter.[3]

Several of the materials listed in your February 12 letter require review for classification and protection of national defense information, as we have noted to the Committee. Further, as the Department explained in its February 16 letter, pursuant to the Department's standard practice, the Department is conducting a review to assess confidentiality interests. Pursuant to this process, the Department shares materials with Executive Branch entities with equities in the content of the materials to determine whether those other entities will assert any confidentiality interests of their own.[4]

For example, the Department has a responsibility to protect the privacy interests of individuals, including witnesses and uncharged third parties, about whom information is developed during the law enforcement process, which can be heightened regarding investigations that close without charges. We also have substantial confidentiality interests regarding sensitive law enforcement and intelligence information. Even with respect to closed law enforcement matters, the Department must protect the numerous confidentiality interests implicated by law enforcement information, including internal deliberations about prosecutorial decisions and investigative steps.[5] It is also possible that materials processed through the standard interagency review, including in response to congressional requests, may include information potentially subject to other privileges and Executive Branch confidentiality interests, or that may be

---

[3] *Cf. Congressional Oversight of the White House*, 45 Op. O.L.C. ___, at *37-39, 56-57 (Jan. 8, 2021) (discussing the importance of participating in the accommodation process before resorting to compulsory process).

[4] *See* Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Feb. 16, 2024).

[5] *See generally* Letter from the Hon. Robert Raben, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. John Linder, Chairman, Subcomm. on Rules and Organization of the House of the H. Comm. on Rules (Jan. 27, 2000).

The Honorable Jim Jordan
Page 3

prohibited from disclosure by law. Such Executive Branch interests require a reasonable amount of time to assess and, to the extent they are implicated, it may be necessary to engage further with the Committee to better understand the specific congressional interests and informational needs asserted in your February 12 and 27 letters.

This review process remains ongoing. Consistent with the Department's commitment to responding to congressional requests for information in good faith, today the Department is producing to the Committee materials for which the review process described above has been completed. First, the Department is prepared to make available, through an in camera production in a facility appropriate for viewing classified information, copies of the documents identified as "A9" and "A10" in Appendix A of Mr. Hur's report. As stated in Mr. Hur's report, Document A9 is a December 2015 "call sheet setting forth the purpose of a call between the Ukrainian Prime Minister and Mr. Biden and talking points," and document A10 "documents the substance of that call in the format of a non-verbatim transcript."[6] Mr. Hur's report stated that "no jury could reasonably find that the substance of the call between Mr. Biden and the Ukrainian Prime Minister was national defense information. The two exchanged pleasantries and the Prime Minister heaped praise upon Mr. Biden for his December 9, 2015 speech to Ukraine's parliament. They did not engage in a substantive policy discussion."[7] Second, the Department is producing communications between the Department and the Executive Office of the President or President Biden's personal counsel referring or relating to Mr. Hur's report. To safeguard individual privacy interests and the integrity of our law enforcement work, we have continued the standard practice of redacting certain personally identifiable information and law enforcement sensitive information in our productions. The Department is available to engage with the Committee to address any questions regarding these limited redactions.

Producing this information to the Committee does not waive any protections or privileges that might otherwise apply to these documents and the information therein. The Department is producing these documents to the Committee in response to the Committee's specific requests and taking into consideration the particular facts and circumstances. It is not a public disclosure, but instead a good-faith effort to respond to the Committee's requests. To ensure an adequate opportunity to review these materials for suitability for public release, we respectfully request that the Committee not disseminate or otherwise disclose the documents or information therein without prior consultation with the Department.

---

[6] Special Counsel Robert K. Hur, U.S. Dep't of Just., *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.*, 310 (Feb. 2024).

[7] *Id.* at 311. The U.S. Embassy in Kiev provided a contemporaneous public summary of this call. U.S. Embassy in Ukraine, *Readout of the Vice President's Call with Prime Minister Arseniy Yatsenyuk* (Dec. 11, 2015), https://ua.usembassy.gov/readout-vice-presidents-call-prime-minister-arseniy-yatsenyuk/.

The Honorable Jim Jordan
Page 4

    We hope you will find this production helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Carlos Felipe Uriarte
Assistant Attorney General

Enclosures

cc:

The Honorable Jerrold L. Nadler
Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515